UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PATRICK SMERALDO,

        Plaintiff,

    v.

JAMESTOWN PUBLIC SCHOOLS,

        Defendant.

21-CV-578-LJV
DECISION & ORDER

---

On May 3, 2021, the plaintiff, Patrick Smeraldo, commenced this action, alleging that the defendant, Jamestown Public Schools ("Jamestown"), discriminated and retaliated against him on the basis of disability in violation of the Americans with Disabilities Act of 1990 ("ADA") and the New York State Human Rights Law ("NYSHRL").  Docket Item 1.  He also seeks relief under 42 U.S.C. § 1983, alleging that Jamestown deprived him of his liberty interest in his reputation as well as his free speech rights.  *Id.*  On July 1, 2021, Jamestown moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), Docket Item 9; on August 10, 2021, Smeraldo responded, Docket Item 13; and on August 17, 2021, Jamestown replied, Docket Item 14.

For the following reasons, Jamestown's motion to dismiss will be granted unless Smeraldo amends his complaint to address the deficiencies noted below.

## **FACTUAL BACKGROUND**[1]

Smeraldo "has been a physical education teacher" employed by Jamestown "for decades." Docket Item 1 at ¶ 14. In December 2019, Jamestown "suspended" Smeraldo. *Id.* at ¶ 15. Jamestown did not tell Smeraldo the specific reason for his suspension; rather, it referred to "vague charges against [] Smeraldo for undefined 'conduct.'" *Id.* at ¶ 16. Nor did Jamestown tell Smeraldo who complained about the "alleged conduct and what the alleged conduct actually was." *Id.* at ¶ 17. In fact, Jamestown instructed Smeraldo not to discuss the charges against him with anyone. *Id.* at ¶ 18. Smeraldo's suspension affected his compensation by causing him to forgo stipends from tutoring and other extracurricular activities.[2] *Id.* at ¶ 19.

Smeraldo's suspension was not his only challenge in the workplace. He also says that he struggled to navigate his disabilities with his employer. *See id.* at ¶¶ 8-13. Smeraldo has "high blood pressure: 200/100; and a neurological injury to his neck." *Id.* at ¶ 9. Jamestown was "well aware of [] Smeraldo's blood pressure issues," *id.* at ¶ 10, and his neck injury, *id.* at ¶ 12. Indeed, Smeraldo had to take five days of sick leave due to his high blood pressure, and he once was "taken out of school in an ambulance." *Id.* at ¶ 10. Smeraldo told the principal of his school about those events and their cause—his high blood pressure. *Id.* at ¶ 11.

---

[1] On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

[2] Although Smeraldo alleges that he missed out on stipends from tutoring and other extracurricular activities, notably absent from the complaint is any allegation that he lost his regular pay from Jamestown. In other words, there is nothing to suggest that he was placed on unpaid leave as opposed to being paid during his suspension.

At some point, Smeraldo "complain[ed] of discrimination on the basis of disability to [Jamestown]." *Id.* at ¶ 13.  But Jamestown did not take action.  Rather, it "refus[ed] [Smeraldo's] multiple requests for [an] accommodation to teach from home." *Id.* at ¶ 40(a).  And when Smeraldo took leave under the Family and Medical Leave Act ("FMLA"), the human resources director "pressured" Smeraldo "to return from FMLA leave early to accommodate other teachers." *Id.* at ¶ 40(b).  Moreover, Smeraldo was "assigned more physically demanding schedule [sic] and duties than his co-worker." *Id.* at ¶ 40(c).

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021) (quoting *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)).

## DISCUSSION

**I.   DISABILITY DISCRIMINATION CLAIMS**

Smeraldo claims that Jamestown violated both the ADA and the NYSHRL by discriminating and retaliating against him based on his disability.  Docket Item 1 at ¶¶ 20-47.  Jamestown argues that Smeraldo's ADA claim is time barred and that both his ADA and NYSHRL claims fail to allege a disability.  Docket Item 9-3 at 9-13.  This Court—at least for now—disagrees with Jamestown that Smeraldo's ADA claim is time barred.  But the Court agrees that regardless, Smeraldo has failed to state a viable claim for relief under both the ADA and NYSHRL.

### A.  Timeliness

"A plaintiff seeking to assert an ADA discrimination claim must first file an administrative charge with the EEOC or an equivalent agency within three hundred days after the alleged unlawful employment practice."  *Zabar v. N.Y.C. Dep't of Educ.*, 2020 WL 2423450, at *4 (S.D.N.Y. May 12, 2020) (citation and internal quotation marks omitted).  But failure to exhaust is not a jurisdictional requirement.  *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000).  Rather, the failure to exhaust is an affirmative defense, and "the burden of pleading and proving [the failure to exhaust] lies with [the] defendant[]."  *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018).

The failure to timely file an EEOC charge "renders the claim time[ ]barred."  *See Zabar,* 2020 WL 2423450 at *4 (citation omitted).  Smeraldo alleges that he "filed a charge of discrimination with the [EEOC]," *see* Docket Item 1 at ¶¶ 6-7, but he does not allege when he filed that charge.

Jamestown argues that Smeraldo "bears the burden of identifying the 300-day window and discriminatory acts within that window," and that because he fails to plead any dates, his complaint must be dismissed.  Docket Item 9-3 at 10.  But Jamestown is incorrect.  The burden of pleading exhaustion does not lie with Smeraldo; instead, as just noted, "the burden of pleading and proving [the failure to exhaust] lies with" Jamestown.  *See Hardaway*, 879 F.3d at 491.

Jamestown also asks the Court to take judicial notice of the EEOC dismissal of Smeraldo's charge and argues that the contents of the dismissal prove that the ADA claim is time barred.  Docket Item 9-3 at 10-11; *see* Docket Item 9-1 at 4 (EEOC dismissal).  In fact, the EEOC dismissal stated that Smeraldo's "charge was not timely filed with [the] EEOC" and that he "waited too long after the date(s) of the alleged discrimination to file [his] charge."  Docket Item 9-1 at 4.  And in deciding a motion to dismiss, the Court may consider any written documents that are incorporated by reference in the complaint or integral to it.  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).  Here, the EEOC dismissal is both, and the Court therefore agrees to take to judicial notice of it.[3]

But the EEOC dismissal does not establish that Smeraldo's ADA claim is time barred.  In essence, Jamestown asks this Court not only to take notice of the EEOC dismissal but to treat its finding about the timeliness of Smeraldo's claims as preclusive.  This Court, however, "is not bound to accept the EEOC's determination that a complaint is untimely."  *Calise v. N.Y. State Dep't of Motor Vehicles*, 2018 WL 4350247, at *5

---

[3] Moreover, because an EEOC determination is a public record, the Court may take judicial notice of it.  *Muhammad v. New York City*, 450 F. Supp. 2d 198, 204-05 (E.D.N.Y. 2006).

(S.D.N.Y. Sept. 12, 2018) (citing *Weise v. Syracuse Univ.*, 522 F.2d 397, 413 (2d Cir. 1975)).  "[A] federal civil action following consideration by a state or federal agency is to be a trial *de novo*."[4]  *Boyce v. Erie County*, 2014 WL 4923588, at *2 (W.D.N.Y. Sept. 30, 2014) (citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 792 (1986); *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 469, (1982)).  Thus, "district courts have substantial discretion with respect to the weight to be accorded an EEOC determination."  *Woodell v. United Way of Dutchess Cnty.,* 357 F. Supp. 2d 761, 772 n.15 (S.D.N.Y. 2005). In other words, this Court may decide for itself whether Smeraldo's ADA claim is time barred.  *See Weise*, 522 F.2d at 413 ("The district court was not bound to accept the Commission's determination on [the timeliness] question as binding; a contrary holding would make meaningless the right to sue after dismissal by the Commission.").  And because it is not clear from the face of the complaint or the documents incorporated therein that the ADA claim is time barred, the Court will not dismiss Smeraldo's ADA claim on that basis.[5]

---

[4] Jamestown argues that *Boyce*, 2014 WL 4923588, is inapposite because the defendants in that case asked the court to dismiss certain discrimination claims based on the finding of the New York State Division of Human Rights that the claims were not substantiated.  Docket Item 14 at 9.  Timeliness determinations, Jamestown argues, do not go to the substance of discrimination claims.  *Id.*  But whether a claim is timely involves the substance of an ADA claim, especially because timely exhaustion is "an essential element" of such a claim, *see Hardaway*, 879 F.3d at 489.  Jamestown is asking this Court not only to consider the fact that the EEOC dismissed Smeraldo's charge on timeliness grounds; it is asking the Court to accept the merits of that timeliness determination.  And as explained above, this Court is not bound by that EEOC determination.

[5] In his response, Smeraldo also argues that "under the Lilly Ledbetter Fair Pay Act[,] each paycheck [Smeraldo received] . . . restart[ed] any statute of limitations clock."  Docket Item 13 at 10.  Because the Court agrees the exhaustion requirement is an affirmative defense and that it is not clear from the face of the complaint or the documents incorporated therein that the ADA claim is time barred, it need not and does

6

### B. Disability

Jamestown argues that Smeraldo's ADA claim still must be dismissed because he has failed to allege how his disabilities affected his major life activities. Docket Item 9-3 at 11-13. And it argues that Smeraldo's NYSHRL claim must be dismissed for that same reason. *Id.*

To state a *prima facie* case of discrimination under the ADA, a plaintiff must show that: (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she is otherwise qualified to perform the essential functions of her job with or without accommodation; and (4) she suffered an adverse employment action because of her disability. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

The ADA defines "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of [an] individual; . . . a record of such an impairment; or . . . being regarded as having such an impairment." 42 U.S.C. § 12102(1). In *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, the Supreme Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives," and that an "impairment's impact must also be permanent or long term." 534 U.S. 184, 198 (2002). But in 2008, after finding that the Supreme Court in *Toyota* "interpreted . . . 'substantially limits' to require a greater degree of limitation than" it had intended, Congress amended

---

not address Smeraldo's alternative argument that the Lilly Ledbetter Fair Pay Act renders his claim timely.

7

the ADA. ADA Amendments Act of 2008, Pub. L. No. 110–325, § 2(a)(7), Sept. 25, 2008, 122 Stat. 3553. Among other things, Congress amended the ADA to "reject the standards enunciated by the Supreme Court in [*Toyota*]." *Id.* § 2(b)(5).

The amended statute now provides the following non-exhaustive list of major life activities: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." *Id.* § 12102(4)(C). Although the term "'[s]ubstantially limits' is not meant to be a demanding standard," *see* 29 C.F.R. § 1630.2(j)(3)(i), "[i]t is well-established that an impairment does not significantly restrict a major life activity if it results only in mild limitations," *Collins v. Giving Back Fund*, 2019 WL 3564578, at *13 (S.D.N.Y. Aug. 6, 2019) (quoting *Whalley v. Reliance Grp. Holdings, Inc.*, 2001 WL 55726, at *4 (S.D.N.Y. Jan. 22, 2001)). And "a plaintiff [must] do more than simply allude to [his] impairments in [his] pleading; []he must plead *how* those impairments significantly impacted [his] major life activities, or []he will not survive a motion to dismiss." *Id.* (emphasis in original); *see also Giallanza v. Time Warner Cable*, 2009 WL 857502, at *7 (W.D.N.Y. Mar. 30, 2009) ("[I]t is well settled under federal law that the ADA requires more than a diagnosis of a condition for a person to be considered disabled as that term is defined under the Act.").

Smeraldo has pleaded two physical impairments: "high blood pressure . . . and a neurological injury to his neck." Docket Item 1 at ¶ 10. But he has not pleaded any facts from which the Court can infer that those impairments limited him in any significant

8

way, let alone substantially limited his ability to perform a major life activity. For example, although Smeraldo alleges that his blood pressure caused him to take five sick days and at one point required an ambulance, *id.* at ¶ 24, those allegations do not plausibly suggest that his high blood pressure significantly limited any major life activity. *Cf. Collins*, 2019 WL 3564578, at *13 ("[S]hort hospitalizations, even when coupled with continued treatment, do not automatically establish that a plaintiff suffers from a substantially limiting condition."). Indeed, the Court cannot tell from the complaint when during Smeraldo's "decades" of employment with Jamestown he had to take those sick days, the circumstances of his hospital visit, or what effect—if any—that episode had on any of his "major life activities." *See* Docket Item 1 at ¶¶ 10, 14.

Smeraldo's allegations about his neck injury are just as tenuous. Other than his allegation that he received workers' compensation for an unspecified period of time, he has not hinted how that alleged impairment affects him in any way. *See id.* at ¶ 12.

Smeraldo therefore has not pleaded that he has a disability within the meaning of the ADA. *See Giallanza*, 2009 WL 857502, at *7; *Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 151 (E.D.N.Y. 2015) ("Without any factual specificity as to the alleged disability claimed and the major life activities affected, the [c]omplaint fails to plead that plaintiff was disabled."). And because disability discrimination claims under the NYSHRL are evaluated under the same standards as the ADA, Smeraldo has failed to state a viable NYSHRL claim as well. *See Simmons v. Woodycrest Ctr. for Hum. Dev., Inc.*, 2011 WL 855942, at *3 (S.D.N.Y. Mar. 9, 2011) ("New York courts, in assessing claims of employment discrimination under . . . the NYSHRL," use "the same standards as those applicable to the federal Americans [w]ith Disabilities Act.").

**II.   SECTION 1983 CLAIMS**

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

Smeraldo asserts two claims under 42 U.S.C. § 1983: (1) that Jamestown deprived him of his liberty interest in his reputation and (2) that Jamestown violated his free speech rights.  Docket Item 1 at ¶¶ 48-70.

**A.  Due Process**

To determine whether an employee has suffered "a violation of his due process rights in the employment context," a court engages in a two-step inquiry. *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 269 (S.D.N.Y. 2005) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)). "First, the court must determine whether a protected property or liberty interest exists." *Id*.  "Second, the court must consider whether the government deprived [a] plaintiff of that protected interest without due process." *Id.*

"[R]eputation alone, apart from some more tangible interests such as employment, is [n]either 'liberty' [n]or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis*, 424 U.S. 693, 701

10

(1976). The loss of reputation therefore "is actionable as a liberty interest only if combined with another deprivation." *Murray v. Williamsville Cent. Sch. Dist.*, 535 F. Supp. 3d 164, 178 (W.D.N.Y. 2021). "To establish the so-called 'stigma plus,' a plaintiff must allege two elements: (1) 'the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' plus (2) 'a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'" *Balentine v. Tremblay*, 554 F. App'x 58, 60 (2d Cir. 2014) (summary order) (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)). In other words, "the stigma alleged is the loss of reputation and the plus is the other deprivation (such as the termination of employment)." *Murray*, 535 F. Supp. 3d at 178.

Smeraldo argues that he "has a cognizable liberty interest in his good name and reputation." Docket Item 13 at 13 (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). To the extent Smeraldo argues that his interest in his reputation and good name is a stand-alone liberty interest, that argument is simply incorrect in light of the above. Although the Supreme Court acknowledged in *Paul* that its "prior cases pointed out the frequently drastic effect of the 'stigma' which may result from defamation," it ultimately held that "reputation alone, apart from some more tangible interests such as employment, is [n]either 'liberty' [n]or 'property' by itself." 424 U.S. at 701. Accordingly, Smeraldo must allege a "plus" beyond his reputational interest.

But Smeraldo has not alleged the "plus" necessary to make his due process claim cognizable. He does not allege that Jamestown terminated him; rather, he alleges that he was suspended. Docket Item 1 at ¶ 15. He does not allege how long he

11

was suspended or that the suspension was without pay.  *See supra* at 2 n.2.  And although he alleges that he "los[t] . . . stipends for tutoring and additional extracurricular activities," Docket Item 1 at ¶ 19, his allegations still do not plausibly suggest that he suffered an alteration to his rights or status—that is, the necessary "plus."  In fact, several courts in this Circuit have found that even a suspension without pay may fail to supply the "plus" in a stigma-plus claim.  *See Rissetto v. County of Clinton*, 2016 WL 4530473, at *22 (N.D.N.Y. Aug. 29, 2016) (collecting cases); *see also Walsh v. Lebanon Bd. of Educ.*, 2013 WL 425092, at *6 (D. Conn. Feb. 4, 2013) ("[C]ase law has established that a suspension without pay is not sufficient to support a claim of a protected liberty interest [for a stigma-plus claim].").

So Smeraldo's allegations that he was suspended and lost some uncalculated income for an unidentified period of time do not plausibly suggest the "plus" for his stigma-plus claim.  And for that reason, he has not stated a viable due process claim.

### B.  Free Speech

"[A] state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression."  *Connick v. Myers*, 461 U.S. 138, 142 (1983).  In the public employment context, however, infringement of speech "requires an allegation that the infringed speech involved matters of public interest."  *Murray*, 535 F. Supp. 3d at 171 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417-18 (2006); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).  And "[p]ersonal grievances that do not also touch upon issues of importance to the public are not actionable as violations of the public employee's First Amendment rights in a

§ 1983 action." *Id.* (citing *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008)).

Smeraldo's free speech claim is premised on Jamestown's ordering him "not to speak" regarding the allegations against him. Docket Item 1 at ¶ 66. But Smeraldo does not allege what it is that he wanted to say and was prohibited from saying. And to state a viable First Amendment claim, he must show that those statements—that is, "whatever he planned to say"—involved "a matter of public interest." *Murray*, 535 F. Supp. 3d at 179. Because Smeraldo has not alleged what he would have said, he has not alleged that his restricted speech "involved matters of public interest." *See id.* at 171.

In fact, Smeraldo's complaint suggests that he wished to speak to clear his name—not to address something of public interest. He seems to take issue with the inferences that people may draw as a result of his being suspended with unspecified allegations against him and his inability to speak out about those allegations. *See* Docket Item 1 at ¶ 65 ("[Jamestown]'s suspension of [] Smeraldo necessarily implies that he has committed misconduct in the performance of his job duties which impugns his reputation and good name."). But "[n]ame clearing merely addresses private grievances." *Murray*, 535 F. Supp. 3d at 179. And a "[p]laintiff needs to assert more than clearing his name to establish matters of public interest." *Id.*

For all those reasons, Smeraldo also has failed to state a viable claim that Jamestown infringed on his First Amendment rights.

### III. LEAVE TO AMEND

Smeraldo has not asked for leave to amend his complaint. Nevertheless, because leave to amend should be "freely given" whenever a complaint is dismissed, *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), Smeraldo may file an amended complaint, within 30 days, that corrects the deficiencies noted above.

### CONCLUSION

For the reasons stated above, Jamestown's motion to dismiss, Docket Item 9, will be granted unless Smeraldo amends his complaint, within 30 days, to correct the deficiencies noted above. No later than 30 days after any amended complaint is filed, Jamestown may answer, move against, or otherwise respond to the amended complaint. If Smeraldo does not file an amended complaint within 30 days, then his complaint will be dismissed, and the Clerk of the Court shall close this case without further order.

SO ORDERED.

Dated: March 31, 2022
       Buffalo, New York

                                                */s/ Lawrence J. Vilardo*
                                             LAWRENCE J. VILARDO
                                             UNITED STATES DISTRICT JUDGE