UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

PATRICK SMERALDO,

        Plaintiff,

    v.                                 21-CV-578-LJV
                                         DECISION & ORDER

JAMESTOWN PUBLIC SCHOOLS,

        Defendant.

───────────────────────────────

On May 3, 2021, the plaintiff, Patrick Smeraldo, commenced this action.  Docket

Item 1.  He seeks relief under the Americans with Disabilities Act of 1990 ("ADA") and

the New York State Human Rights Law ("NYSHRL"), alleging that the defendant,

Jamestown Public Schools ("Jamestown"), discriminated and retaliated against him

because of his disabilities.  *Id.*  He also seeks relief under 42 U.S.C. § 1983, alleging

that Jamestown deprived him of a liberty interest in his reputation as well as his free

speech rights.  *Id.*

On July 1, 2021, Jamestown moved to dismiss the complaint.  Docket Item 9.

After the parties briefed the motion, Docket Items 13 and 14, this Court found that

Smeraldo's complaint was subject to dismissal because it failed to state a viable claim

but granted him leave to file an amended complaint, Docket Item 15.  So on April 29,

2022, Smeraldo filed an amended complaint.  Docket Item 16.[1]

───────────────

[1] The amended complaint asserts an additional disability discrimination claim
under Title VII of the Civil Rights Act of 1964 ("Title VII").  *See* Docket Item 16 at 10
(alleging a "second cause of action in violation of Title VII . . . (analytically identical to
N.Y.S. Human Rights Law) on the basis of disability" (some capitalization omitted)).  But
"Title VII does not prohibit discrimination on the basis of disability."  *Risco v. McHugh*,
868 F. Supp. 2d 75, 107 (S.D.N.Y. 2012); *see also Falso v. SPG Direct*, 353 F. App'x

On May 31, 2022, Jamestown moved to dismiss the amended complaint.  Docket Item 17.  On June 21, 2022, Smeraldo responded to the motion to dismiss, Docket Item 20, and filed a "proposed second amended complaint," Docket Item 20-1 (capitalization omitted).[2]  And on July 19, 2022, Jamestown replied, Docket Item 23, addressing some of its arguments to the proposed second amended complaint, *see id.* at 5-8, 11-12.

For the following reasons, Jamestown's motion to dismiss is granted.

## BACKGROUND[3]

Smeraldo "has been a physical education teacher" employed by Jamestown "for decades."  Docket Item 16 at ¶¶ 5, 6.  On December 12, 2019, Jamestown suspended him.  *Id.* at ¶¶ 8, 45.  Jamestown did not tell Smeraldo the specific reason for his suspension; rather, it referred only to "vague charges against [him] for undefined 'conduct.'"  *Id.* at ¶ 10.  Nor did Jamestown tell Smeraldo who complained about the "alleged conduct [or] what the alleged conduct actually was."  *Id.* at ¶ 14.  And

---

662, 663 (2d Cir. 2009) (summary order) (affirming dismissal of the plaintiff's Title VII claim because the "complaint alleged discrimination based on disability only").  Smeraldo's Title VII claim therefore is dismissed.

[2] This Court has reviewed Smeraldo's proposed second amended complaint, Docket Item 20-1, and finds that the allegations Smeraldo has added would not change the outcome of this action.  As a matter of judicial economy, the Court incorporates and addresses allegations from the proposed second amended complaint throughout this opinion rather than granting Smeraldo leave to amend his complaint again.

[3] On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  The following facts are taken from the amended complaint, Docket Item 16, and the proposed second amended complaint, Docket Item 20-1, and are viewed in the light most favorable to Smeraldo.

Jamestown "forbid [sic] [] Smeraldo from discussing the circumstances of his suspension." *Id.* at ¶ 19.

Smeraldo's suspension "negatively affected his compensation including loss of stipends for tutoring and additional extracurricular activities."[4] *Id.* at ¶ 15. The suspension also "damaged his reputation and called into question his character and fitness for [] working with minors." *Id.* at ¶¶ 11-12. During Smeraldo's suspension, Jamestown "barred [him] from district buildings, forcing him to" request permission to "drop off or pick up his own children . . . or to attend routine school events . . . as a parent of his children." *Id.* at ¶ 13. "Smeraldo was ordered to return to work on March 9, 2020." *Id.* at ¶ 16.

Smeraldo has struggled to navigate his disabilities in connection with his employment. *See id.* at ¶¶ 17, 23-33. He has "high blood pressure, a neurological injury to his neck, and osteopathic injuries," including a herniated disc and two bulging discs. *Id.* at ¶ 23. These disabilities "require reasonable accommodation[s] . . . that would allow [Smeraldo] to sit while teaching and take periodic rest periods . . . [to] raise his feet to moderate his blood pressure." *Id.* at ¶¶ 26, 31. Jamestown is "well aware" of these conditions—Smeraldo has discussed them with the school principal and received

---

[4] Although Smeraldo alleges that he lost unspecified "stipends for tutoring and additional extracurricular activities," *see* Docket Item 16 at ¶ 15; *see also id.* at ¶¶ 50 (lost "additional stipends and income"), 75 ("stipends and additional earnings"), he does not allege that he lost any pay from Jamestown, *see generally* Docket Item 16. In other words, nothing in the amended complaint suggests that he was placed on unpaid— rather than paid—leave. And Smeraldo's response to the motion to dismiss, Docket Item 20, does not take issue with Jamestown's suggestion that the leave was, in fact, with pay, *see* Docket Item 17-2 at 7 ("There is no allegation . . . that [Smeraldo's] suspension was unpaid (*nor can there be, in good faith*)." (emphasis added)).

worker's compensation for his neck injury, *id.* at ¶¶ 32-33, 39—but it would not accommodate Smeraldo, *id.* at ¶¶ 42, 56(a).

The "stress" of Smeraldo's job "contributes" to his high blood pressure.  *Id.* at ¶ 24.  "At times" when Smeraldo works, "his blood pressure has soared to 200/100," causing "acute dizziness, vomiting, and syncope (fainting/loss of consciousness)."  *Id.*  "These instances of exceptionally high blood pressure come on without warning" and have "impacted [] Smeraldo's ability to stand, walk, drive, and speak."  *Id.* at ¶ 25.  Once, when Smeraldo "was hit in the face with a ball," he was transported from the school in an ambulance due to his "heightened blood pressure and [the] potential injury."  *Id.* at ¶ 24.  And he "has taken 5 days [of] sick leave because of his" high blood pressure.  *Id.* at ¶ 32.

Smeraldo's "neurological and osteopathic disabilities" are the result of injuries he suffered in May 2017 when he "was required . . . to operate [] faulty equipment [owned by Jamestown] without adequate safety controls."  *Id.* at ¶¶ 27-28.  These disabilities limit Smeraldo's "range of movement, ability to lift, grip strength, and at times, his balance."  *Id.* at ¶ 30.  Smeraldo's limited "ability to react to moving objects (such as a ball thrown in his direction) [has] caused [him] to be fearful for his safety in the workplace."  *Id.*

Once, after Smeraldo "presented to the school nurse with high blood pressure," Smeraldo "complain[ed] of discrimination on the basis of disability to [Jamestown]."  *Id.* at ¶¶ 41-43.  But Jamestown "refused to provide . . . reasonable accommodation[s]," *id.* at ¶ 42, and denied Smeraldo's request to teach from home, *id.* at ¶ 56(a).  Sometime after that conversation, Jamestown suspended Smeraldo.  *Id.* at ¶¶ 44-45.

Jamestown has discriminated against Smeraldo in several other ways as well. When Smeraldo took leave under the Family and Medical Leave Act ("FMLA"), the human resources director "pressured" him "to return . . . early to accommodate other teachers." *Id.* at ¶ 56(b).  Jamestown denied Smeraldo "a transfer to a job for which he had ten years of experience." *Id.* at ¶ 56(e).  A supervisor told Smeraldo that "he wasn't comfortable" emailing Smeraldo because the supervisor did not want the email "read back in court." *Id.* at ¶ 56(d).  And Smeraldo was "assigned more physically demanding schedule[s] and duties than his co-worker." *Id.* at ¶ 56(c).  The Jamestown superintendent even acknowledged Smeraldo's "mistreat[ment]" and moved Smeraldo to a different teaching assignment on December 7, 2020. *Id.* at ¶ 56(f).

Finally, at some point during his employment, Smeraldo became "[f]rustrated by situations that continually endangered Jamestown . . . students." *Id.* at ¶ 18.  For example, when Smeraldo inquired about an incident in which a student allegedly was restrained by an employee, the school administration told Smeraldo that the incident "didn't concern him." *Id.* at ¶ 17.  Smeraldo then "became a whistleblower and reported concerns about misappropriation of budget money, student exposure to contaminated water . . . , unreported and unauthorized district-owned guns on campus . . . [,] faulty safety equipment, and unsafe building conditions." *Id.* at ¶ 18.  He made "efforts to pursue proper internal procedures to report [these] unsafe and illegal conditions." *Id.* at ¶ 19.[5]

---

[5] According to the proposed second amended complaint, Smeraldo also spoke out at a "public meeting" where he raised "concerns about safety" after "a badly botched lock-down that was traumatic for his son," a Jamestown student.  Docket Item 20-1 at ¶¶ 46-47.  And on December 8, 2019, Smeraldo "met separately with the [school] board president for 2 hours," presumably to discuss those same concerns.  *Id.* at ¶ 48.

Smeraldo filed a "charge of discrimination with the [EEOC] on February 2, 2021." *Id.* at ¶ 21.  After he received a "Right to Sue" letter, *id.* at ¶ 22, Smeraldo commenced this action, Docket Item 1.  Jamestown then moved to dismiss the complaint, Docket Item 9, and after this Court found that Smeraldo's claims were subject to dismissal, Docket Item 15, Smeraldo filed an amended complaint, Docket Item 16.  Jamestown then moved to dismiss the amended complaint, Docket Item 17, and the parties briefed the motion, Docket Items 20 and 23, as noted above.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021) (quoting *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)).

## DISCUSSION

I.    **SECTION 1983 CLAIMS**

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

Smeraldo asserts two claims under 42 U.S.C. § 1983: (1) that Jamestown violated his right to due process when it deprived him of his liberty interest in his reputation, Docket Item 16 at ¶¶ 65-78; and (2) that Jamestown violated his free speech rights, *id.* at ¶¶ 79-95.  Jamestown argues that Smeraldo fails to state either a due process claim or a free speech claim.  Docket Item 17-2 at 16-23.  This Court agrees with Jamestown.

A.    **Due Process**

To determine whether an employee has suffered "a violation of his due process rights in the employment context," a court engages in a two-step inquiry.  *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 269 (S.D.N.Y. 2005) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)).  "First, the court must determine whether a protected property or liberty interest exists."  *Id.*  "Second, the court must consider

whether the government deprived [the] plaintiff of that protected interest without due process." *Id.*

"[R]eputation alone, apart from some more tangible interests such as employment, is [n]either 'liberty' [n]or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis*, 424 U.S. 693, 701 (1976). A loss of reputation therefore "is actionable as a liberty interest only if combined with another deprivation." *Murray v. Williamsville Cent. Sch. Dist.*, 535 F. Supp. 3d 164, 178 (W.D.N.Y. 2021). "To establish th[is] so-called 'stigma plus,' a plaintiff must allege two elements: (1) 'the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' plus (2) 'a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'" *Balentine v. Tremblay*, 554 F. App'x 58, 60 (2d Cir. 2014) (summary order) (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)). In other words, "the stigma alleged is the loss of reputation and the plus is the other deprivation (such as the termination of employment)." *Murray*, 535 F. Supp. 3d at 178.

Smeraldo alleges that he has a liberty interest "in his own good name and reputation," Docket Item 16 at ¶ 66 (citing *Jenkins v. McKeithen*, 395 U.S. 411, 423-24 (1969)), and that Jamestown sullied his good name and reputation by suspending him, *see id.* at ¶ 72. Moreover, he argues that he suffered the required "plus" because Jamestown "barred [him] from district[-]owned property, which deprived [him of] the opportunity to earn stipends and additional earnings that had been part of his routine employment." Docket Item 16 at ¶ 75. But this Court already has found that Smeraldo's allegations of lost stipends "do not plausibly suggest that he suffered an

alteration to his rights or status—that is, the necessary 'plus.'"  Docket Item 15 at 12.[6]
And nothing in his amended pleadings changes that analysis.

Smeraldo also argues that the "plus" is the deprivation of his right to access
school property "as a parent of a child who attends Jamestown Public Schools," Docket
Item 20 at 8 (some capitalization omitted), but that argument likewise fails.  Courts in
this Circuit have held that "parents do not enjoy a protected liberty or property interest in
unfettered access to their child's school grounds," *Eskenazi-McGibney v. Connetquot
Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 230 (E.D.N.Y. 2015) (collecting cases), and
Smeraldo cites no authority to the contrary, *see* Docket Item 20 at 8-9.  So the
restriction of Smeraldo's access to his child's school therefore is not a "plus" sufficient to
sustain a due process claim for loss of reputation.[7]

Because Smeraldo has not plausibly alleged the "plus" necessary for his stigma-
plus claim, his due process claim is dismissed.

---

[6] In fact, this Court noted that "several courts in this Circuit have found that even
a suspension *without* pay may fail to supply the 'plus' in a stigma-plus claim."  Docket
Item 15 at 12 (emphasis added) (citing *Rissetto v. Cnty. of Clinton*, 2016 WL 4530473,
at *22 (N.D.N.Y. Aug. 29, 2016) (collecting cases); *Walsh v. Lebanon Bd. of Educ.*,
2013 WL 425092, at *6 (D. Conn. Feb. 4, 2013)).  And as noted above, Smeraldo has
not alleged that he lost his regular pay during his suspension.  *See* Docket Item 16; *see
also supra* note 4.

[7] The amended complaint may suggest that Jamestown violated Smeraldo's due
process rights by denying him a hearing prior to his suspension.  *See* Docket Item 16 at
¶ 73.  But "[t]he Second Circuit has intimated, and courts in this [Circuit] routinely hold,
that no property interest is implicated when a public employee is suspended with pay."
*Farooq v. N.Y.C. Health & Hosps. Corp.*, 2020 WL 5018387, at *4 (S.D.N.Y. Aug. 25,
2020) (citing *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005)).  Because
Smeraldo has not alleged that his suspension was unpaid, *see* Docket Item 16; *see also
supra* note 4, he has not plausibly alleged that he had a property interest in a pre-
suspension hearing.

**B.      Free Speech**

A public employee alleging that his employer retaliated against him in violation of the First Amendment must show that "(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action." *Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2004) (quoting *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 382 (2d Cir. 2003)).

**1.      Public Concern**

"[A] state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142 (1983).  In the public employment context, however, infringement of speech "requires an allegation that the infringed speech involved matters of public interest."  *Murray*, 535 F. Supp. 3d at 171 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417-18 (2006); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)); *see also Ross v. N.Y.C. Dep't of Educ.*, 935 F. Supp. 2d 508, 516 (E.D.N.Y. 2013) ("Public employees' speech is protected under the First Amendment when they speak as a private citizen addressing matters of public concern." (internal quotation marks omitted) (quoting *Looney v. Black*, 702 F.3d 701, 710 (2d Cir. 2012))).  "Personal grievances that do not also touch upon issues of importance to the public are not actionable as violations of the public employee's First Amendment rights in a [section] 1983 action." *Murray*, 535 F. Supp. 3d at 171 (citing *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008)).

Along the same lines, if a public employee speaks "pursuant to [his] official duties," that speech is not protected. *Ross*, 935 F. Supp. 2d at 516 (quoting *Looney*, 702 F.3d at 710). For example, a teacher who raises concerns about school safety with his supervisors is not entitled to First Amendment protection because the teacher's duties include "protecting his . . . students and preventing inappropriate activity in his . . . classroom." *Anglisano v. N.Y.C. Dep't of Educ.*, 2015 WL 5821786, at *6 (E.D.N.Y. Sept. 30, 2015). "Accordingly, district courts have granted motions to dismiss First Amendment retaliation claims brought by teachers . . . who allege retaliation for statements made to supervisors regarding classroom and school safety." *Id.* (collecting cases).

Smeraldo's amended complaint asserts two bases for his Free Speech claim. First, he says that Jamestown ordered him "not to speak" about the allegations against him. Docket Item 16 at ¶ 89. But as this Court noted previously, "Smeraldo does not allege what it is that he wanted to say and was prohibited from saying," and he therefore "has not alleged that his restricted speech involved matters of public interest." Docket Item 15 at 13 (citations and internal quotation marks omitted). Nothing in the amended complaint changes that conclusion. *See* Docket Item 16.

Second, Smeraldo suggests that he was suspended for "engag[ing] in whistleblower activities about unsafe equipment, lax safety considerations, guns on campus, unsafe building conditions[,] and concerns about other district employees abusing or assaulting students." Docket Item 16 at ¶ 86. But the amended complaint does not allege that Smeraldo made public comments about these issues, *id.* at ¶¶ 18-19, 86; on the contrary, it suggests that he "reported [his] concerns" to his supervisors,

*id.* at ¶¶ 18-19 (noting Smeraldo's "efforts to pursue proper *internal* procedures to report unsafe and illegal conditions" (emphasis added)).  Therefore, such internal reports were made "pursuant to [Smeraldo's] official duties" as an educator and are not entitled to First Amendment protection.  *See Ross*, 935 F. Supp. 2d at 516.  Smeraldo's amended complaint therefore does not state a claim under the First Amendment.

In his proposed second amended complaint, however, Smeraldo alleges that "[f]ollowing a badly botched lock-down that was traumatic for his son, [he] spoke out at a public meeting—as a parent— . . . with concerns about safety."  Docket Item 20-1 at ¶ 47.  This allegation plausibly suggests that in the meeting, Smeraldo spoke "not merely as [an] employee[] but also as a concerned citizen, seeking to express his views on an important [issue]."  *See City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Rel. Comm'n*, 429 U.S. 167, 174-75 (1976).  That speech therefore was entitled to First Amendment protection.[8]

### 2.   Adverse Employment Action

A public employee who brings a First Amendment retaliation claim also must show that he suffered an adverse employment action.  *Cobb*, 363 F.3d at 102.  An adverse employment action is "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (quoting *Washington v. Cnty. of*

---

[8] The proposed second amended complaint also alleges that Smeraldo met with the school board president, presumably to address those same concerns.  Docket Item 20-1 at ¶ 48.  Because this Court finds that Smeraldo's speech at the public meeting was protected, it need not, and does not, address whether his conversation with the school board president was protected speech as well.

*Rockland*, 373 F.3d 310, 320 (2d Cir. 2004)).  Adverse employment actions include—but are not limited to—"discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand."  *Id.* (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999)).

"[A]dministrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action."  *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006); *see also Laface v. Eastern Suffolk Boces*, 349 F. Supp. 3d 126, 150 (E.D.N.Y. 2018) ("[P]lacing [the plaintiff] on temporary paid administrative leave is not an adverse employment action.").  More specifically, the Second Circuit has held that "an employee does not suffer a materially adverse change in the terms and conditions of [his] employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner."  *Joseph*, 465 F.3d at 91.  But "[this] rule is not an absolute one, and [] a suspension with pay may, in some circumstances, rise to the level of an adverse employment action."  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2012).

A paid suspension may constitute adverse employment action "if the employer takes actions beyond an employee's normal exposure to disciplinary policies."  *Joseph*, 465 F.3d at 92 n.1.  "The relevant question is therefore whether the employer has simply applied reasonable disciplinary procedures to an employee or if the employer has exceeded those procedures and thereby changed the terms and conditions of [the employee's] employment."  *Id.*  For example, a paid suspension may be an adverse employment action if the employer interferes with the employee's medical insurance or access to other benefits the employer provides.  *See Winslow v. Pulaski Acad.*, 448 F.

Supp. 3d 197, 208 (N.D.N.Y. 2020) (finding that "losing tuition reimbursement and insurance benefits"—which "caus[ed the plaintiff] to go . . . without medication she needed"—was "a material loss of benefits").

Jamestown argues that Smeraldo has not plausibly pleaded an adverse employment action because he "has alleged at most a temporary paid suspension from work." Docket Item 17-2 at 22. In light of Smeraldo's vague and conclusory allegations in his various complaints, this Court agrees.

Smeraldo says that his suspension was retaliatory, but he has not alleged anything even suggesting that it fell outside the scope of Jamestown's "preexisting disciplinary policies." *See Joseph*, 465 F.3d at 91; Docket Item 16. For example, while Smeraldo says that he was "barred" from Jamestown property during his suspension, Docket Item 16 at ¶ 13, he does not allege that Jamestown ordinarily allows suspended teachers to freely access school property, *see generally* Docket Item 16. Nor has Smeraldo alleged that he was denied access to Jamestown property when he requested it in connection with his role as a parent. *Compare id.* at ¶ 13 (alleging that Smeraldo was "forc[ed]" to request "permission" to access Jamestown property but not that Jamestown denied those requests), *with Winslow*, 448 F. Supp. 3d at 208 (finding an adverse employment action when the plaintiff was suspended and, among other things, was "not allowed to collect personal documents from her work computer when she requested access"). Likewise, Smeraldo's vague allegations about lost stipends are not sufficient to establish that he suffered an adverse employment action. *Cf. Brown*, 673 F.3d at 151 (noting that a plaintiff's "loss of overtime pay was a direct *result*

of his suspension with pay, not an additional action taken by his employer" (emphasis in original)).

In sum, Smeraldo has not alleged that he suffered any "materially adverse change in the terms and conditions of [his] employment." *See Joseph*, 465 F.3d at 91. While he may take issue with the alleged reason for his suspension, he gives this Court no reason to think that the procedure accompanying that suspension fell outside Jamestown's "preexisting disciplinary policies." *See id.*; Docket Item 16. And what is more, Smeraldo does not allege that his suspension "had any negative [e]ffect on his employment." *See Canady v. Union 1199*, 253 F. Supp. 3d 547, 558 (W.D.N.Y. 2017); Docket Item 16; *see also Roginsky v. M&T Bank*, 2022 WL 2671707, at *12 (W.D.N.Y. June 21, 2022), *report and recommendation adopted*, 2022 WL 2669920 (W.D.N.Y. July 11, 2022) (finding no adverse employment action when plaintiff "returned to the same position with no change in his responsibilities" after paid administrative leave).

Smeraldo therefore has not alleged that he suffered an adverse employment action, and his First Amendment retaliation claim based on what may have been public comments is dismissed for that reason.

## II.    DISABILITY DISCRIMINATION CLAIMS

Smeraldo also claims that Jamestown violated the ADA and the NYSHRL by discriminating and retaliating against him based on his disabilities. Docket Item 16 at ¶¶ 34-64. Jamestown argues that Smeraldo's disability claims are untimely and that Smeraldo has failed to state a claim under either statute. Docket Item 17-2 at 9-16. This Court finds that some of Smeraldo's ADA claims are time barred and that,

regardless, Smeraldo has failed to state a claim under the ADA.  And it declines to exercise pendent jurisdiction over Smeraldo's NYSHRL claims.

### A.    ADA Claims

#### 1.    Timeliness

"A plaintiff seeking to assert an ADA discrimination claim must first file an administrative charge with the EEOC . . . within three hundred days after the alleged unlawful employment practice."  *Zabar v. N.Y.C. Dep't of Educ.*, 2020 WL 2423450, at *4 (S.D.N.Y. May 12, 2020) (citation and internal quotation marks omitted).  This "time restriction[] appl[ies] to each discrete act of alleged discrimination," *Ellis v. Delphi Corp.*, 2009 WL 3671371, at *3 (W.D.N.Y. Oct. 29, 2009) (citations omitted), and the failure to timely file an EEOC charge "renders [a] claim time[ ]barred," *Zabar*, 2020 WL 2423450, at *4.

The filing deadline for an EEOC complaint is "subject to equitable tolling" in "rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights."  *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (alterations, citations, and internal quotation marks omitted).  A plaintiff seeking equitable tolling "must establish that [1] extraordinary circumstances prevented him from filing a timely petition, and [2] he acted with reasonable diligence during the [relevant] period."  *Coleman v. N.Y.C. Dep't of Health & Mental Hygiene*, 2022 WL 704304, at *3 (S.D.N.Y. Mar. 9, 2022) (quoting *Martinez v. Superintendent of E. Corr. Facility*, 806 F.3d 27, 31 (2d Cir. 2015)).

Smeraldo alleges that he filed his EEOC charge on February 2, 2021.  Docket Item 16 at ¶ 21.  Jamestown argues that Smeraldo's ADA claims are time barred

16

because Smeraldo has not alleged that any discriminatory conduct occurred on or after April 8, 2020—three hundred days before February 2, 2021.[9]  Docket Item 17-2 at 9-11. Smeraldo responds that "the 300[-]day period had been waived" during the COVID-19 "shutdown."  Docket Item 20 at 5.  But that argument is unavailing.

To start, Smeraldo does not cite any authority—a statute, EEOC guidance, case law, or anything else—to support his claim that the three-hundred-day filing deadline was "waived" due to the COVID-19 pandemic.  *See* Docket Item 20 at 5.  Nor could this Court find any such authority; in fact, this Court understands that the EEOC "handl[ed] discrimination charges during the pandemic" and directed claimants "to file charges [online] through a public portal."  *See Coleman*, 2022 WL 704304, at *3.

Smeraldo may have meant to say that he is entitled to equitable tolling due to the COVID-19 pandemic, but he has not alleged any extraordinary circumstances that would justify such tolling.  *See Rodriguez v. Hudson Valley Chrysler*, 2021 WL 5910173, at *3 (S.D.N.Y. Dec. 14, 2021) ("[A] plaintiff must plead more than the existence of the pandemic to show the extraordinary circumstances required for equitable tolling.").  Indeed, he says nothing about how the pandemic affected him; instead, he makes only a general "passing reference to the pandemic" to justify his late filing.  *See Hines v. United States*, 2021 WL 2456679, at *2 (S.D.N.Y. June 16, 2021).  And Smeraldo has not shown that he "acted with reasonable diligence during the period for which he now seeks tolling."  *See Coleman*, 2022 WL 704304, at *3.  Smeraldo therefore is not

---

[9] Jamestown "notes that the actual EEOC [c]harge seems to bear a filing date of January 29, 2021," but correctly observes that "the discrepancy has no impact" on the timeliness of Smeraldo's claims.  Docket Item 17-2 at 10 n.3.

entitled to equitable tolling of the filing deadline and can assert ADA claims relating to discriminatory acts that occurred only on or after April 8, 2020.

Smeraldo provides the dates of three instances of allegedly discriminatory conduct: (1) he was suspended on December 9, 2019, Docket Item 16 at ¶ 45; (2) he was "ordered to return to work on March 9, 2020," *id.* at ¶ 16; and (3) he was transferred "from Washington Middle School to another teaching assignment" on December 7, 2020, *id.* at ¶ 56(f).[10]  Smeraldo's claims relating to his suspension and return to work therefore are time barred, but his claim relating to his December 2020 transfer is not.[11]

### 2.  Disability

To state a *prima facie* case of discrimination under the ADA, a plaintiff must show that: (1) his employer is subject to the ADA; (2) he is disabled within the meaning of the ADA; (3) he is otherwise qualified to perform the essential functions of his job with or without accommodation; and (4) he suffered an adverse employment action because of his disability.  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

---

[10] Jamestown argues that the claim relating to the transfer should be dismissed because Smeraldo "does not allege whether the [transfer] resulted in any material detriment to his terms-and-conditions of employment," Docket Item 17-2 at 10 n.4, but this Court does not reach that issue because it finds that Smeraldo's ADA claims are subject to dismissal on other grounds, *see infra* at 18-22.

[11] Smeraldo does not allege the dates of several other allegedly discriminatory acts, including: 1) Jamestown's denial of his request for accommodations; 2) the request that he return early from FMLA leave; 3) the assignment of more physically demanding schedules and duties than those of a co-worker; 4) a supervisor's statement that he "wasn't comfortable" emailing Smeraldo; and 5) Jamestown's denial of Smeraldo's application for a transfer.  *See* Docket Item 16 at ¶ 56.  But regardless of when those acts occurred, Smeraldo's ADA claims are subject to dismissal on other grounds.  *See infra* at 18-22.

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1), including—but not limited to—"caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, . . . communicating, and working," id. § 12102(2)(A).  Although the term "'[s]ubstantially limits' is not meant to be a demanding standard," 29 C.F.R. § 1630.2(j)(1)(i), "[i]t is well-established that an impairment does not significantly restrict a major life activity if it results only in mild limitations," Collins v. Giving Back Fund, 2019 WL 3564578, at *13 (S.D.N.Y. Aug. 6, 2019) (quoting Whalley v. Reliance Grp. Holdings, Inc., 2001 WL 55726, at *4 (S.D.N.Y. Jan. 22, 2001)).  And "a plaintiff [must] do more than simply allude to [his] impairments in [his] pleading; []he must plead how those impairments significantly impact[ his] major life activities."  Id. (emphasis in original); see also Giallanza v. Time Warner Cable, 2009 WL 857502, at *7 (W.D.N.Y. Mar. 30, 2009) ("[I]t is well settled under federal law that the ADA requires more than a diagnosis of a condition for a person to be considered disabled as that term is defined under the Act.").

Jamestown argues that Smeraldo has failed to plead that he is disabled because his "vague allegations" do not establish that his impairments substantially limit a major life activity.  Docket Item 17-2 at 11-14.  Smeraldo responds that he "did indeed indicate how his disabilities substantially affected his major life activities" by alleging "that he had difficulty standing, communicating, and working, on multiple occasions."  Docket Item 20 at 6.  But this Court agrees with Jamestown.

Smeraldo alleges that he has multiple disabilities: high blood pressure, a neurological neck injury, and osteopathic injuries.  Docket Item 16 at ¶ 23.  But he has

not pleaded any facts from which this Court can infer that those impairments limit him in any significant way, let alone substantially limit his ability to perform a major life activity.

Smeraldo provides few examples of how the limitations caused by his high blood pressure—dizziness, vomiting, and loss of consciousness, *id.* at ¶¶ 24-25—affect him. He alleges that he "has taken 5 days [of] sick leave" due to his high blood pressure, *id.* at ¶ 32, and that his high blood pressure once "caused [him] to be removed from his workplace by an ambulance" after he "was hit in the face with a ball," *id.* at ¶ 24.  But those allegations do not plausibly suggest that his high blood pressure significantly limits any major life activity.[12]  *Cf. Collins*, 2019 WL 3564578, at *13 ("[S]hort hospitalizations, even when coupled with continued treatment, do not automatically establish that a plaintiff suffers from a substantially limiting condition.").

Smeraldo's other allegations about the effects of his high blood pressure are vague at best.  For example, he characterizes his condition as "wholly disabling given the likelihood of syncope," but he does not say how often he experiences "instances of exceptionally high blood pressure" or loss of consciousness.  *See* Docket Item 16 at ¶¶ 24-25.  Likewise, he alleges generally that his high blood pressure "at times" limits his ability to stand, walk, drive, and speak, *see id.*, but that sort of broad allegation has been found to be "impermissibly vague" as well, *see Shine v. N.Y.C. Hous. Auth.*, 2020 WL 5604048, at *5 (S.D.N.Y. Sept. 18, 2020) ("[The plaintiff's] allegation that she cannot life her arm 'at times' is impermissibly vague . . . and it is unclear how long her inability to lift her arm lasts each time it occurs.").

---

[12] Especially because Smeraldo has been employed "for decades," Docket Item 16 at ¶ 6, five days of sick leave do not suggest a significant medical issue, let alone a significant limitation of a major life activity.

Along the same lines, Smeraldo asserts that he has neurological and osteopathic injuries, Docket Item 16 at ¶ 29, but he does not provide examples of how those injuries affect him.  Rather, he simply alleges in general terms that these injuries limit his "range of movement, ability to lift, grip strength, and at times, his balance."  *Id.* at ¶ 30.  Again, Smeraldo's conclusion that his conditions "ha[ve] significantly impacted his life activities," *id.* at ¶ 29, does not establish that he is disabled.  *See Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 (2d Cir. 2014) ("[V]ague statements about a plaintiff's difficulties . . . , without more, will not suffice to support a finding of an ADA violation."); *Nadel v. Shinseki*, 57 F. Supp. 3d 288, 296 (S.D.N.Y. 2014) ("Aside from [p]laintiff's conclusory claims that he . . . has difficulty sleeping, walking, and performing daily activities without assistance, he has not identified any evidence demonstrating that his [] injury created a limitation upon a major life activity, let alone a substantial limitation." (internal citations omitted)).

In sum, Smeraldo's allegations lack the "factual specificity" required to establish that his alleged disabilities affect a major life activity.  *See Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 151 (E.D.N.Y. 2015).[13]  He therefore has failed to plead that he has a disability under the ADA, and his ADA claims are dismissed for that reason.[14]

---

[13] The allegations in Smeraldo's proposed second amended complaint likewise lack the required factual specificity.  *See* Docket Item 20-1.  For example, Smeraldo adds allegations that "[t]he effects of [his] disabilit[ies] are ongoing" and that his disabilities "substantially limit[] a major life activity (including but not limited to[] walking, standing, hearing, and seeing)."  *Id.* at ¶¶ 21-22, 26-27.  But those allegations are no less conclusory than the allegations in the amended complaint and therefore do not establish that Smeraldo's impairments substantially limit a major life activity.

[14] To the extent that Smeraldo asserts an ADA failure-to-accommodate claim, *see* Docket Item 20 at 6-7, that claim fails because Smeraldo has not shown that "he is

B.    **NYSHRL Claims**

"A district court 'may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction.'"  *Williams v. N.Y.C. Dep't of Health & Mental Hygiene*, 299 F. Supp. 3d 418, 428 (alterations in original) (quoting 28 U.S.C. § 1367(c)(3)).  "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) . . . , [federal] courts should 'abstain from exercising pendent jurisdiction.'"  *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) (quoting *Birch v. Pioneer Credit Recovery, Inc.*, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007)).  Federal courts often decline to exercise pendent jurisdiction over a plaintiff's NYSHRL claims after dismissing ADA claims arising from the same facts.  *See, e.g.*, *Williams v. Geiger*, 447 F. Supp. 3d 68, 88-89 (S.D.N.Y. 2020); *Anderson*, 93 F. Supp. 3d at 147-48; *Kruger v. Hamilton Manor Nursing Home*, 10 F. Supp. 3d 385, 390-91 (W.D.N.Y. 2014).

In its prior decision, this Court said that "disability claims under the NYSHRL are evaluated under the same standards as the ADA."  Docket Item 15 at 9 (citing *Simmons v. Woodycrest Ctr. for Hum. Dev., Inc.*, 2011 WL 855942, at *3 (S.D.N.Y. Mar. 9, 2011)).  But that statement was not entirely accurate because "the definition of 'disability' is broader under [] the NYSHRL . . . than under the ADA."  *Williams*, 447 F. Supp. 3d at 88; *see also Simmons*, 2011 WL 855942, at *4 ("[T]he definition of disability under the NYSHRL . . . is arguably broader than the comparable definition of disability under the

---

a person with a disability under the meaning of the ADA."  *See Berger v. N.Y.C. Police Dep't*, 304 F. Supp. 3d 360, 368-69 (S.D.N.Y. 2018) (quoting *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015)).

ADA.").  Having dismissed all the claims over which it has original jurisdiction, this Court declines to exercise supplemental jurisdiction over Smeraldo's NYSHRL claims.  *See Williams*, 447 F. Supp. 3d at 89 ("[A]pplying state . . . law to the facts of [plainitff's] claims would be a question best left to the Courts of the State of New York." (citation and internal quotation marks omitted)).

Smeraldo's NYSHRL claims therefore are dismissed without prejudice.

## **CONCLUSION**

For the reasons stated above, Jamestown's motion to dismiss, Docket Item 17, is GRANTED.  The Clerk of the Court shall close this case.


SO ORDERED.

Dated:   January 26, 2023
         Buffalo, New York


                                        */s/ Lawrence J. Vilardo*
                                       LAWRENCE J. VILARDO
                                       UNITED STATES DISTRICT JUDGE